UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| VICTOR ROMM, | ) | No. 05 B 46897 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| PEARLE VISION, INC., and PEARLE, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 06 A 69 |
| | ) | |
| VICTOR ROMM, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling is the motion of debtor Victor Romm to dismiss the first amended adversary complaint of plaintiffs Pearle Vision, Inc. and Pearle, Inc. (collectively "Pearle"). For the reasons that follow, the motion to dismiss will be denied.

### 1. Background

In deciding Romm's motion, the court has considered both the first amended complaint and its exhibits, taking all facts alleged to be true. *See Hollander v. Brown*, 457 F.3d 688, 690 (7th Cir. 2006). The court has also reviewed the debtor's petition and schedules, along with the district court's docket and papers filed in the related action styled *Pearle Vision, Inc., et al. v. Romm, et al.*, No. 04 C 4349 (N.D. Ill.), all matters of which the court can take judicial notice. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (stating that in resolving a

motion to dismiss a court can take judicial notice of matters of public record).

The facts are as follows. Pearle is engaged in business as the franchisor of optical shops, for want of a better term. Romm is a doctor of optometry. Romm and several corporations in which he had an interest were Pearle franchisees operating four "Pearle Vision" shops in northern Illinois.

In June 2004, Pearle filed an action in the district court against Romm and his corporations seeking to terminate the franchises and obtain possession of the leased premises. In August 2004, Pearle moved for a preliminary injunction relating to the termination. At the hearing, the parties announced they had reached an agreement on the transfer of certain personal property and patient records, an agreement that apparently obviated the need for an injunction.

The next night, however, Romm conducted what Pearle calls a "midnight raid" of the four shops, making off with all the property and records. Pearle immediately moved for a preliminary injunction on an emergency basis, and on September 30, 2004, the district court granted the motion. In the preliminary injunction, the district court ordered Romm to give Pearle immediate access to the location where the property and records were stored. The injunction also granted Pearle the right to inspect and remove from the store premises all patient records and records of services.

Romm failed to comply with the injunction. Pearle then filed three separate and successive petitions for orders requiring Romm and the companies to show cause why they "should not be held in contempt." Each petition was granted. After granting the third petition, the district court held a short, combined hearing on all three petitions at which Romm testified. On October 14, 2004, the court entered an order stating: "Victor Romm shall be sanctioned at the rate of $1,000 per day from and including October 14, 2004 until such time as he has fully

complied with the preliminary injunction issued September 30, 2004 and the petitions."

The district court subsequently held a full evidentiary hearing on the three petitions. On October 26, 2004, the court entered an order finding that Romm had still not complied with the preliminary injunction or with any of the show cause orders. The court declared that the show cause orders "shall remain in effect, including the $1,000 per day sanction set out in the October 14th order."

Shortly thereafter, counsel for Romm and the corporations withdrew, and the litigation became considerably less active. In May 2005, Pearle moved for summary judgment on its complaint. In September 2005, the district court issued a memorandum opinion and order granting the motion. Two weeks later, the court entered an order awarding judgment in favor of Pearle and against Romm in the amount of $325,521.99. The order also stated: "Victor Romm is directed to show cause why judgment in the additional amount of $321,000 should not be entered against him, which is the accumulated amount of the $1000/day sanction imposed by the court in its October 14, 2004 order, up to and including September 1, 2005, the date summary judgment was entered, after the court held Victor Romm in civil contempt . . . ."

Romm filed a response in accordance with the district court's order. On October 10, 2005, however, before the court could address whether the sanctions should be reduced to judgment, Romm sought protection under chapter 7 of the Bankruptcy Code. In light of the bankruptcy filing, the district court dismissed Pearle's action against Romm without prejudice.

On January 18, 2006, Pearle filed an adversary complaint against Romm in the bankruptcy case. The complaint seeks a determination under section 523(a)(6) of the Bankruptcy Code that the $321,000 in sanctions entered against Romm in the district court action are excepted from discharge as a debt for "willful and malicious injury." 11 U.S.C. § 523(a)(6).

-3-

Two days after the adversary complaint was filed, Romm received his discharge, and three days after that the bankruptcy case was closed.

Romm now moves under Rule 12(b)(6), Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)), to dismiss Pearle's first amended complaint. His argument is straightforward: even taking all of Pearle's allegations to be true, Pearle has no claim (1) because the district court never held Romm in contempt, and (2) because the sanctions imposed against him were never reduced to judgment. Therefore, Romm asserts, he owes Pearle no "debt" the dischargeability of which this court can determine. Pearle opposes the motion.

## 2. Discussion

Romm's motion must be denied. The complaint does allege a debt, one potentially nondischargeable under section 523(a)(6). Neither premise of Romm's argument is correct.

The first premise, that the district court never held Romm in contempt, is not only incorrect but irrelevant. The argument is incorrect, for starters, because there is little doubt the district court held Romm in civil contempt. For a party to be held in civil contempt, he must have violated the "unequivocal command" of a court order. *Tranzact Technologies, Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). Sanctions imposed on a contemnor constitute civil rather than criminal contempt if the court imposes the sanctions either to compel the contemnor's obedience or to compensate the complainant, and if the contemnor is able to purge the contempt through compliance. *Id.*; *see also In re Grand Jury Proceedings*, 280 F.3d 1103, 1107 (7th Cir. 2002).

Here, Pearle's three petitions each requested an order that Romm show cause why he should not be "held in contempt." Each time the petitions were granted, the district court ordered

Romm to show cause why he should not be "held in contempt." The district court's October 14, 2004 order sanctioned Romm at the rate of $1,000 a day "until such time as he has fully complied with the preliminary injunction" – by its express terms a sanction intended to secure Romm's compliance with a court order.[1/] And in its September 12, 2005 order, the district court described its October 14, 2004 order as having "held Victor Romm in civil contempt." The district court is in the best position to say what its own order means. *See Southworth v. Board of Regents of Univ. of Wis. Sys.*, 376 F.3d 757, 766 (7th Cir. 2004) (noting that a district court's interpretation of its orders is entitled to broad deference).

Romm argues that the October 14, 2004 order nowhere employed the word "contempt." But Romm cites no authority for the proposition that a contempt order must contain the word "contempt" to be effective, and it need not. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1307 (11th Cir. 2006). The question is what a reasonable person would understand the order to mean. *Id.* Romm also notes that it was Judge Kocoras – not Judge Lefkow, the judge assigned to the case – who in the September 12, 2005 order described the October 14, 2004 order as holding Romm in contempt. That, however, is beside the point. Judge Kocoras doubtless knows a contempt order when he sees one. If Romm disagreed with Judge Kocoras's characterization, furthermore, he could have moved to have the September 12 order corrected. He never did. Given all of the circumstances, no one could reasonably conclude that the October 14, 2004 order was anything but an order holding Romm in civil contempt.

More important, though, it makes no difference for purposes of this adversary proceeding whether the October 14 order held Romm in contempt. Certainly, as Pearle points out, sanctions

---

[1/] Daily sanctions of this kind are a common civil contempt mechanism. *See, e.g., Employers Ins. of Wausau v. El Banco de Seguros del Estado*, 357 F.3d 666, 669 (7th Cir. 2004).

resulting from findings of civil contempt have often been held nondischargeable under section 523(a)(6). *See, e.g., Siemer v. Nangle (In re Nangle)*, 274 F.3d 481, 484 (8th Cir. 2001); *Heyne v. Heyne (In re Heyne)*, 277 B.R. 364, 369 (Bankr. N.D. Ohio 2002). But section 523(a)(6) does not make "contempt" sanctions nondischargeable, and neither does any other subpart of section 523(a). Section 523(a)(6) says that a debt resulting from a "willful and malicious injury" is nondischargeable. 11 U.S.C. § 523(a)(6). Whether the sanctions against Romm are nondischargeable accordingly depends, not on whether they are labeled as "contempt" or as something else, but on whether the conduct leading to them was "willful and malicious." That is a factual matter obviously not susceptible to resolution on a motion to dismiss.

The second premise of Romm's argument – that the sanctions were never reduced to a judgment – is equally flawed. Under section 523(a), it is true, there must be a "debt" before there can be a determination of a debt's nondischargeability. 11 U.S.C. § 523(a). But "debt" is defined in section 101(12) as "liability on a claim." 11 U.S.C. § 101(12). And "claim," in turn is defined in section 101(5)(A) as a "right to payment, *whether or not such right is reduced to judgment* . . . ." 11 U.S.C. § 101(5)(A) (emphasis added). No judgment is necessary, then, for there to be a debt. *See United States v. Galletti*, 541 U.S. 114, 124 n.5 (2004); *Banks v. Gill Distrib. Ctrs., Inc.*, 263 F.3d 862, 868 (9th Cir. 2001); *Riddle v. Knapp (In re Knapp)*, 179 B.R. 106, 110 (Bankr. S.D. Ill. 1995). And so it is no ground for dismissing Pearle's complaint that the district court's sanctions against Romm were not reduced to a judgment.

In arguing otherwise, Romm makes a great deal out of the Supreme Court's declaration in *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990), that a "right to payment" is "nothing more nor less than an enforceable obligation." *Id.* at 559. By "enforceable obligation," however, the Court could not have meant an obligation resulting from a judgment:

that reading of section 101(5)(A) would have contradicted the statute's plain language.[2] Nor is the sense of the phrase "enforceable obligation" as limited as Romm believes. Statutes often create enforceable obligations. Contracts always do. *Davenport* does not suggest, let alone hold, that a "right to payment" will not constitute a "debt" for purposes of the Bankruptcy Code unless the right has been reduced to judgment.

Romm may be concerned not so much with the absence of a judgment *per se* as with the fact that the district court never finally determined whether he should be sanctioned. The district court gave Romm an opportunity to show cause why the sanctions should not be reduced to judgment, but he filed bankruptcy before the issue could be decided. Again, however, the district court's failure to resolve that issue pre-petition does not mean there is no "debt" for purposes of section 523(a). Debts include liabilities on contingent and disputed claims, not just undisputed ones and noncontingent ones. *See* 11 U.S.C. §§ 101(5)(A); 101(12); *In re Rosteck*, 899 F.2d 694, 696-97 & n.3 (7th Cir. 1990) (noting that a liability need not be fixed and liquidated for there to be a "debt").

Because the adversary complaint does allege a "debt" the dischargeability of which can be determined, Romm's motion to dismiss will be denied.

It makes sense at this point to address an additional issue lurking in the background: what to do about the contingent and disputed nature of the debt? Eventually, some court must decide whether and to what extent the sanctions against Romm will remain in place. Disputed claims like this can, of course, be resolved and liquidated in the bankruptcy court. *See generally Newsub Magazine Servs. LLC v. Rey (In re Rey)*, Nos. 04 B 35040, 04 A 4443, 04 A 4443, 2005

---

[2]   Long after *Davenport* was decided, the Court observed in *Galletti* that a debt need not be reduced to a judgment. *See Galletti*, 541 U.S. at 124 n.5. Romm fails to mention *Galletti*.

WL 894820, at *5 (Bankr. N.D. Ill. April 18, 2005). Often, though, the automatic stay is modified to permit disputed claims to be decided in courts of general jurisdiction. The automatic stay is also typically modified to permit the resolution of contingent claims. *See First Fiscal Fund Corp. v. Fishers Big Wheel, Inc.*, 36 B.R. 299, 303 (Bankr. E.D.N.Y. 1984).

Because Romm has received a discharge and the bankruptcy case has been closed, there is no automatic stay here to modify: the stay has been replaced by the discharge injunction. *See* 11 U.S.C. §§ 362(c)(2)(A), 363(c)(2)(C), 524. But the discharge injunction can also be modified if the bankruptcy court determines in its discretion that modification is warranted. *See Hawhurst v. Pettibone*, 40 F.3d 175, 179 (7th Cir. 1994); *In re Shondel*, 950 F.2d 1301, 1308-09 (7th Cir. 1991). The question, then, is whether the discharge injunction should be modified to permit Pearle and Romm to finish off their unresolved sanctions dispute in the district court.

The answer is yes: the most reasonable course is to permit the district court to decide the sanctions issue. The district court was the court that entered the initial, October 14, 2004 sanctions order, not to mention the subsequent October 25, 2004 order requiring the sanctions to remain in place. In the process, the district court held not one but two evidentiary hearings at which Romm testified. The district court thus has far greater knowledge of the parties and the facts and so is in a far better position than this court to say whether Romm has shown cause why the sanctions should not be reduced to judgment.

If the district court concludes that the sanctions against Romm should be reduced to judgment, the district court can enter an order to that effect along with an appropriate judgment. Once appellate rights are exhausted and the judgment is final, dischargeability can be addressed here. If, on the other hand, the district court declines to enter a judgment against Romm, concluding in the end that sanctions are not warranted, the matter will be *res judicata* (again once

appellate rights are exhausted), and this adversary proceeding will be moot. Leaving the sanctions decision to the district court best serves the interests of judicial economy and comity.[3]

### 3. Conclusion

For these reasons, the motion of Victor Romm to dismiss the adversary complaint of Pearle Vision Inc. and Pearle, Inc. is denied. On its own motion, the court stays these proceedings. The discharge injunction is modified to permit Pearle to move for vacatur of the dismissal of the district court action and to seek resolution of the sanctions question in the district court. This matter will be set for further status on May 14, 2006, at 10:00 a.m.

An appropriate order will be entered in accordance with this opinion.

Dated: December 13, 2006

A. Benjamin Goldgar
United States Bankruptcy Judge

---

[3] Because the bankruptcy court is part of the district court, neither court owes the other "comity" – not, at least, in the technical sense of "the respect or *politesse* that one government owes another," *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006); *see Boricua Motors Corp. v. Tamachi, Inc.*, 76 B.R. 891, 893 (D. P.R. 1987) (noting that "there is no consideration of comity between the district court and the bankruptcy court"). "Comity" is used here simply in the sense of "judicial courtesy between the courts undertaking to deal with the same matter." *Gross v. Irving Trust Co.*, 289 U.S. 342, 345 (1933); *see, e.g., Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (observing that "the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each others affairs") (internal quotation omitted).